You may begin whenever you're ready. Good morning, Your Honors, and may it please the Court. My name is Ken Lee, and I'm an attorney with the Federal Public Defender's Office, and I represent Samuel Marquez, and I'd like to reserve two minutes for rebuttal. There's no question that the failure to instruct a jury on the defendant's theory of defense when he presents evidence to support that theory violates the defendant's due process rights, and that's a fact that's recognized by the respondents in their answering brief in district court where they inform the district court that the claim was right for review, and then argue the merits of the claim. Nor is there a question that Mr. Marquez presented sufficient evidence to get the insanity instruction that he requested. Well, now that's my question. Why is there — why is it certain that that should have been presented to the jury? Didn't the Nevada Supreme Court say that it was not sufficient? Well, what the Nevada Supreme Court did — well, there are multiple problems with what the Nevada Supreme Court did first. Oh, but I understand that you might have problems with what the Nevada Supreme Court does with Nevada law, but I can't deal with that. That's not something I can deal with on habeas. What we've got here is we have somebody who wants to present an insanity instruction, which in fact says that they want to present this defense, and the court said, no, you don't have enough evidence to get it, and then the Nevada Supreme Court says, you're right, you didn't have enough evidence to get it. In the record, what the Nevada Supreme Court does, they find — in district court, when the defendant asked for this instruction, the district court judge said, no, I'm not going to give the instruction because I find your expert, Dr. Chambers, to be incredible, which means that he made a credibility determination on the doubt. Just a minute. Just a minute. I appreciate all these good arguments you can make to the Nevada Supreme Court, because the Nevada Supreme Court is the one who has to determine what is the Nevada law on this particular situation. But once the Nevada Supreme Court rules that there wasn't enough evidence to get that instruction, then at that point, I'm done. How can I say that I can reweigh what Nevada Supreme Court is saying? Well, first of all, when the Nevada Supreme Court reviewed this claim, they reviewed it under an abuse of discretion standard, and you don't review a Federal constitutional claim like that. Again, again, I'm really trying — your argument is that the evidence that was presented met a State court standard in finger, and the Nevada Supreme Court had that definitely in front of them and said, no, it does not, and you don't get the instruction. There — let me ask you this way. Let's go at it a different way. Is there a Federal right to an insanity instruction? Yes. Where? So — Medina says there is no right. Powell says there is no right. So where's the right? So when you look at Matthews, Matthews implies that — I know. Matthews talks about your ability to present your defense. But focusing dead set on what you're talking about, you're talking about whether the defendant has the right to have an insanity instruction. And frankly, our Supreme Court's kept out of that, which has meant we've had to keep out of it. So the only way you get this thing in front of me is to suggest that the State's, if you will, affirmative defense of insanity, which the State court says is not applicable here, I'm somehow to find that there's a Federal right that's been violated. And I don't find it. So this Court numerous times has recognized the right to present an affirmative defense. And the Supreme Court and Marshall have said that this Court can — this panel can look to precedents of other — of the circuit to establish what's clearly So you have cases like Kahn, Bradley, Beardsley, Johnson, which all establish this right. On top of that, you have Gilmour, which the State responds to, which all stands for the proposition at this point, after Gilmour, that there is this right to present — Well, but just a minute. Just a minute. When we're talking in those cases about that right to, if you will, present the affirmative defense, we're talking about a Federal affirmative defense they have a right to present. That gives us a Federal way to look into something. That's why I said, give me the case that says there's a Federal right to an insanity instruction. I can't find that case, and therefore not being able to find that case, I'm having a tough time understanding why it is I can look down into Nevada law and ask the Nevada Supreme Court, undo what the Nevada Supreme Court does with their own law. Well, first of all, when the Nevada Supreme Court looked at this case, they clearly said — they cite the Finger, which is — which is a Nevada Supreme Court case. And in Finger, the Nevada Supreme Court clearly states that the right to present an insanity defense is a due process right, which is covered under the due process clause of both the Nevada Constitution and the U.S. Constitution. So they're recognizing it themselves that there is a due process claim here. Even assuming that the Court doesn't agree — But even recognizing a due process, they said, under Nevada law, you do not have the right to have had that instruction given. Well, Nevada law applies to the McNaughton Rule, which is a Federal law. And then secondly, even if — even if you assume that — even assuming what the Nevada Supreme Court did, a review, it's still an unreasonable determination of facts. So I can — I guess I'm — I guess I still want you to focus in on the fact that in order for me to do something on habeas to help you, I've got to have something from the Supreme Court that says what happened in the Nevada court is wrong. I've got to have that. And I've got to have the Nevada Supreme Court doing it wrong or applying it wrong or doing something. I don't have that because I don't have a Federal right to an insanity instruction. All I've got in this case is the Nevada Supreme Court and the Nevada law allowing an insanity instruction in some instances, but the Nevada Supreme Court itself saying this wasn't one of the instances. So this right to present this defense is gone because the Nevada Supreme Court says Nevada law doesn't allow it. So you can look at it one of two ways. So Mr. Marquez can get relief either under D-1, which is showing that the Nevada Supreme Court decision is either unreasonable or contrary to clearly established Federal law, or you can — he can get relief if he can show that it's an unreasonable determination of fact. And here, we know there's an unreasonable determination of fact because what the Supreme Court and Nevada Supreme Court says is, look, he doesn't present any evidence that he was delusional, which, in fact, that's not true because Dr. Chambers testifies that Marquez acted under the belief that he was going to get — that this apparition was going to kill him if it did not do what he said — what it said to do. So that's the delusion. Second, the Nevada Supreme Court then goes on to say, Dr. Chambers does not testify that this — the delusion prevented Marquez from not knowing or understanding the — his actions. And that's also on — that's also incorrect, because in the record, Dr. Chambers does say that. He says that Mr. Marquez cannot do that because of this delusion and also because he has the psychosis. So he testifies to delusions plus, which is more than what is required in Nevada. So he provides more information. Kennedy, maybe we should move to the second issue. Was it ineffective to concede that the killing of the bartender during closing argument? What's your best argument there? Well, I see my time is almost up. But, Your Honor, the best argument is, as the — I mean, I want you to look at prejudice. Let me give you every benefit of the doubt on representation falling below the subjective standard, which the government would not be happy with me saying. I'll give you that. Let's look at prejudice. There was a surveillance video which was played for the jury. Only one person in addition to the bartender was in the bar. The man went to the bar, attempted to withdraw cash, and then attacked the bartender with a bat. The owner of the bar printed off the verification strip at the ATM. Then the defendant confessed on a video which was played for the jury. Tell me there's prejudice. There absolutely is prejudice, Your Honor, because the theory of defense was that he was insane at the time of the offense. So by conceding his guilt, he's conceding everything. Mr. Marquez was not as — Mr. Marquez, according to the jury instructions, was charged with felony murder. Murder, too, is not a defense to that. But insanity would have been. So the fact that at the point in time that Mr. Marquez's attorney says, we're not claiming that — we're not saying that Dr. Chambers was right, that he didn't have the intent. We're not saying that. Of course you were saying that. That was the entire defense. And that would have been a complete defense to the felony murder charge, which was never alleged in the information. That would have been a complete defense for him. And that's why it's prejudicial. So it takes that out of the hands of the jury. But the bottom line is counsel did everything he could to try to get this insanity defense instruction in. He did all of his right — all of his might to try to argue this. And the Court says, no, you can't. So he did the best he could without that. And my problem is, is that I can't see the prejudice with all the — all the evidence that was sitting there. That's why I let you see — let you attack that. I see that my time is up. It is. But you may have a minute for rebuttal when the time comes, because we took a lot of your time. Mr. Smith? I did take a lot of time. We seem to do it every time with everybody, so. May it please the Court. The Nevada Supreme Court did not unreasonably apply clearly established Supreme Court precedent or unreasonably determine the facts when it affirmed the denial of Mr. Marquez's insanity instruction and when it found that Mr. Marquez's trial counsel was not ineffective. On the first question, I take it you would agree that, in general, there's a due process right for a defendant to have an instruction on a defense that is otherwise recognized by state law if there is some evidence to support it. As a general proposition, yes. If the defense itself is recognized, I would agree. Okay. So an insanity defense is recognized in Nevada, correct? Under Nevada law, yes. Okay. If the finger standards are met, that's correct. So what is it? There are a number of Supreme Court cases dealing with the right to present a defense in which the underlying proceedings occurred in state courts. So what is our obligation in looking at this case? If we were to conclude, for example, and I know that you don't concede this, but if we were to agree with Mr. Lee that the Nevada Supreme Court's statements of fact that underlay its decision were palpably wrong, such that ordinarily, under Federal principles, the instruction should have been given, what are we supposed to do? A couple points there, Your Honor. First, I'll start with Trombetta, because that's where that line of cases originates, where you have a meaningful opportunity to present a complete defense. But the U.S. Supreme Court held in Gilmer v. Taylor that that complete defense right has never been extended to affirmative defenses like insanity is in Nevada law. So that complete defense really doesn't exist. So is it your position that even if there had been, let's say, no appeal to the State Supreme Court, it had just been left to be final after the trial, that because this involves an insanity defense, he would not be entitled to a jury instruction if he had evidence of insanity? Is that your position? My position is, even if that were an error, which we're not conceding here. That's a yes or no question. Is that your position, that let's lay aside that the Nevada Supreme Court looked at this conviction, and we had clear evidence that a jury might have found him insane under Nevada law, and the State trial courts refused to give an instruction? Are you saying there's no due process right that he could claim here? I just want to make sure I understand Your Honor's question correctly. Is the hypothetical, if there were sufficient evidence, and we, everyone agrees there was sufficient evidence for the instruction. Yes. But the court nonetheless didn't grant it. Yes. Because you're, what you were arguing is that, well, because it's an affirmative defense, King's X, there's no due process right. And I, that's what I'm trying to understand. I think under Stell v. McGuire and Gilmer v. Taylor, that would still be an error, instructional error of State law. So I think it would be a State law error. But you think there would be no due process right violated in that circumstance? I think I would actually point to Your Honor's dissent in Bradley where it would have to be, the exclusion would have to be arbitrarily excluded. I'm not sure if within the meaning of arbitrarily excluded, a one-off error in one case would meet that standard for a due process right. Well, that's a long-winded way of saying yes, yes to my question. And there's, in your view, there is no due process right, even if there's clear evidence to support a State law claim of insanity. Yes, Your Honor. I think it would be under Stell v. McGuire, that would be an error of State law that does not rise to a Federal constitutional violation. Even though the person has a due process right to present a defense that is supported by the law of the jurisdiction. Again, I would point to Gilmer v. Taylor where the due process right to present a complete defense has never been extended to affirmative defenses, like under Nevada law the insanity defense is. But setting that hypothetical aside, in this case, there was not sufficient evidence under Nevada State law, as the Nevada Supreme Court found, warranting the insanity defense instruction in any way. So in your view, we have to just accept what the Nevada Supreme Court says. Assuming for this question that we otherwise, that there otherwise is a due process right, we don't have any ability to examine whether there was an error of the sort that we look for in other habeas contexts. I think it would have to do with the specific defense itself and whether the U.S. Supreme Court has ever determined whether this specific defense is constitutionally required. No, I think I didn't make my question clear. It seems to be your position that even if the, even if the State, ordinarily in a habeas case, we can look at what the State court did and if there is a palpable factual error, we can say so, even though the State court said X, we can say, well, that was wrong as a matter of Federal analysis. So what I'm trying to understand is whether you think we're precluded from engaging in that consideration. I would say that in this particular case, if I'm understanding your question correctly, the Nevada Supreme Court did not unreasonably determine the facts of this record when it found that an insanity defense instruction was not required. Okay. But we can consider that question. You're just saying there's any, in your view, there's one answer to it. If, Your Honor, if the Court finds that the Supreme Court's reservations, as Judge Smith pointed out, in Powell, Medina, and more recently in Clark v. Arizona in footnote 20, if Your Honors conclude that those reservations of rights do not preclude the fact that the Supreme Court, or do not prevent the Court from finding, this Court from finding, that an insanity defense is clearly established, because I don't think the Supreme Court, U.S. Supreme Court. No, we're talking about something. We're talking past each other a lot, I'm afraid. I'm looking at the Nevada Supreme Court's decision and asking you, if we were to find that the statements of fact are unreasonably wrong, what are we supposed to do? Okay. If Your Honor were to find that the Nevada Supreme Court's statements of fact were unreasonably wrong, and set aside the presumption that they are presumptively correct under E1. Well, overcome the presumption. We don't, if Sam were to set it aside. Then I suppose Your Honors could grant the writ. I'm not saying you couldn't. If you were to find the Supreme Court, Nevada Supreme Court, unreasonably determined the facts, then that is a potential basis for the writ to be granted. But on this record, the Nevada Supreme Court did not unreasonably determine the facts from Dr. Chambers' own testimony. I'll point the court to 513 of the record when Dr. Chambers flatly said, no, not a delusional state. Then he continued, so he was in a psychotic state at the time. So Dr. Chambers flatly determined that Mr. Marquez was not in a delusional state. And a delusional state is a prerequisite to finding that an insanity defense was required under Nevada law. Let me push you a little bit on that. Are you really saying that when we don't have any federal right to this insanity instruction and the only right there is to it at all is under the Nevada law, that we can go down and examine the facts that the Nevada Supreme Court determined or looked at in determining how to apply Nevada law and determine that there's an unreasonable application of the fact? Not at all, Your Honor. I think first this Court has to determine that there is a federal constitutional right to the defense, which, again, in Clark v. Arizona, Justice Souter said in footnote 20 that the Court has never held that there was an insanity defense instruction. So this case is very much like the Supreme Court's decision in White v. Woodall. In White v. Woodall, the Supreme Court overturned a Sixth Circuit grant of habeas relief where the Sixth Circuit faulted the State court for not applying a certain instruction in the penalty phase of a capital proceeding. The Supreme Court had previously held that that instruction was required during the guilt phase, but had specifically reserved the question of whether or not that instruction was required during the penalty phase. And Justice Scalia pointed out that that reservation by itself demonstrated that there was no clearly established federal right. It seems to me that what we're really talking about here, and I appreciate my colleagues' questions, and there are times when a State could make an unreasonable determination of facts, but it seems to me that the unreasonable determination of facts can only be examined by me or this Court when, in fact, there's a federal right at issue. I agree, Your Honor. This is not when there's a — where it's a State affirmative defense. I don't see any case anywhere which would suggest we should be able to examine the facts. That's correct. I guess I should amend my prior answer if I was unclear. A prerequisite to engaging in the analysis of whether the State court unreasonably determined the facts is that there is a preexisting right required by the Federal Constitution. So what you're — I mean, that takes us back to the argument in your view that because this is an affirmative defense, there is no Federal due process right to a defense instruction, even if there's evidence to support it. That's correct. That's correct. Unless there was a Federal affirmative defense. Correct. It's not a Federal trial, so. It's not a Federal affirmative defense at all. That's correct. And that's the issue with the Matthews line of cases that my colleague relies upon. The Matthews line of cases have their origins in Federal criminal trials and Federal direct appeals. And as a panel of this Court said in Bueno v. Hallahan, Matthews is not a rule of constitutional dimension. And if I'll turn with my last 30 seconds here to the ineffective assistance of counsel claim, I just want to point out one thing that's not in the briefs that I think might be relevant to the Court's consideration. Even if there were evidence before the State District Court that Mr. Marquez had objected to the concession, and there is no evidence before the State Court which this Court is limited to reviewing, it's still not clearly established that even if counsel had conceded guilt over his objection, that would be a constitutional violation. That issue is before the U.S. Supreme Court right now and will be argued in January 17th in McCoy v. Louisiana. The question presented there is whether it is unconstitutional for defense counsel to concede and accuse guilt over the accused express objection. So, again, even assuming that Mr. Marquez had objected here, which, again, there's no evidence of, it's not clearly established that that would fall below an objective standard under Strickland. Thank you. Thank you, counsel. Mr. Lee, you may have a minute for rebuttal. Just very briefly, Your Honors. First of all, the Respondent is incorrect on his reliance on Gilmore. Gilmore clearly stands for the proposition that restrictions imposed on defense's ability to present an affirmative defense is a new rule within the meaning of Teague. In other words, after Gilmore, it now becomes law. And that's why Marquez gets the benefit of Gilmore, because Gilmore was a Teague question determining whether or not it was a new rule. And so under Gilmore, this is a new rule which now gets applied to Marquez because Marquez's date of finality is after Gilmore. So he gets that benefit. So there is a constitutional question here and there is a constitutional claim here under Gilmore. Secondly, the State Respondent relies on Bueno. And as I pointed out in my reply brief, Bueno, the decision in Bueno is based on dicta of Matthews. So the rationale doesn't even apply. And this Court has constantly, you know, when you look at Conde as an advocate case, and this Court found that there is an affirmative defense, a due process right to an affirmative defense. So this Court has recognized it already. Thank you, Your Honors. The case just argued is submitted, and we appreciate the spirited and useful arguments from both counsels. Just for planning purposes, we'll hear one more case before taking a short break.
judges: Graber, N.R. Smith, Zipps